## ALEX. Z. COWAN et al., PETITIONERS.

Middlesex, April, 1901.

*Restrictions — Disregard and Violation — Change in Character of Neighborhood.*

Title in this case comes under a deed given in 1853 in which the land was described as lot 29 on a plan of house lots in Cambridge, and was conveyed subject to certain building restrictions. The Examiner reports that these restrictions were originally placed on large amounts of the land in the vicinity, but that they are now quite generally disregarded, and that no mention of the restrictions is made in many of the later deeds. The petitioner asks for registration of title free from the restrictions. This is a typical case of a class of petitions which is rapidly increasing in number. The question has been raised at the outset whether this Court can declare as a matter of law that any restriction of record has terminated because of a general violation of it, or because of a change in the character of the neighborhood.

Merely because a Court of Equity will not under the circumstances of a particular case enforce compliance with the terms of a restriction, it by no means follows that the restriction itself is terminated. Parker *v.* Nightingale, 6 Allen, 341, 349. Ware *v.* Smith, 156 Mass. 186. Jackson *v.* Stevenson, 156 Mass. 496.

In Jackson *v.* Stevenson, while the Court held that the character of the neighborhood had so far changed that it would be inequitable, and not effective in carrying out the purpose for which the restrictions were imposed, to any longer enforce compliance with them, it nevertheless recog-

nized the restrictions as still existing, and that the plaintiffs were entitled to substantial damages for their breach.

It is only where the character of the neighborhood has changed so completely that the purpose for which the restrictions were imposed has wholly failed, that it can be said that the restrictions have terminated. Bangs v. Potter, 135 Mass. 245. In Bangs v. Potter a large tract of land near a railroad terminal had been cut up into lots for warehouse purposes, and through these lots a space had been reserved for railway tracks. The space was restricted to use as a railway, and it was provided in the deeds that no building should ever be built over it. The railway tracks were discontinued. The Court held that the servitude was expressly limited to a railway, " and though it would be a benefit to each lot to receive light and air through the space which was to be kept open for the railway, the benefits of light and air are incidents which result from the provisions of a railway, and are not provided for independently of the railway, and no servitude is imposed or easement granted for any purpose but the railway; and when the railway was abandoned, all servitudes and easements terminated, and each owner had the right to use the whole of his lot for any purpose he pleased, without restraint by the ' terms of sale or provisions in the deeds.' "

The only cases in this Court in which titles have thus far been registered free from restrictions of record have been cases in which the entire purpose for which the restrictions were imposed has come to an absolute end; in which not only would a Court of Equity refuse to enforce the restrictions and no damages would lie for breach of observance, but in which it could further be held that the restrictions in themselves had terminated with the termination of the physical conditions on which alone the restrictions were based. Examples of such cases are the dwelling house restrictions on Bosworth and other streets now devoted absolutely and exclusively to business purposes, and certain restrictions on

Cambridge property based wholly on the existence and use of an old canal, long since filled in. Where the character of the property and the neighborhood has merely undergone a partial, even though substantial change, or where it could not be said that no damages whatever could be recovered by anybody because of a breach, registration free from restrictions of record must be refused.

As to a general disregard of restrictions in the neighborhood, while such disregard might estop those who had themselves thus violated them, it would not affect those who had not. General disregard and violation of restrictions in a neighborhood, without express acquiescence by all parties interested in the particular case under consideration, will not waive or terminate the restrictions. And " an owner may neglect to object to infractions of restrictions to some extent, without losing his right to enforce the restrictions when they more clearly and seriously affect him." Jackson v. Stevenson, 156 Mass. 496. Linzee v. Mixer, 101 Mass. 512 ad fin. Dorr v. Harrahan, 101 Mass. 531. Payson v. Burnham, 141 Mass. 547. (Note: And see Bacon v. Sandberg, 179 Mass. 396; Scollard v. Normile, 181 Mass. 412.)

Decree accordingly.